NOT DESIGNATED FOR PUBLICATION

No. 128,488

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HUGO FIGUEROA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed December 5, 2025. Vacated and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., CLINE, J., and COURTNEY D. CRAVER, District Judge, assigned.

CLINE, J.: In the early 1990s, the Legislature adopted the Kansas Sentencing Guidelines Act (KSGA). The Act was designed to minimize racial and geographic sentencing disparity and prison overcrowding, as well as ensure more predictability in sentencing. The result significantly limited a district court's discretion when sentencing felons. Savely, *25 Years of the Kansas Sentencing Guidelines: Where We Were, Where We Are, and What's Next?*, 86 J.K.B.A. 22, 23-24 (July/Aug. 2017).

Over the years, the Legislature has adjusted the KSGA to more effectively address these goals. For example, in 2013, the Legislature amended the KSGA to limit the

1

number of probation violators being sent to prison in an effort to further reduce prison overcrowding. 86 J.K.B.A. at 26-27. The Act now requires a district court to impose intermediate (sometimes called graduated) sanctions for probation violations unless the court determines the violator has committed a new crime, has absconded from supervision, the probation sentence stemmed from a dispositional departure, or the district court makes specific findings that public safety or the welfare of the offender will not be served by intermediate sanctions. K.S.A. 22-3716(c)(7)(A)-(D).

It is this last exception which is at issue here. The district court revoked Hugo Figueroa's probation and imposed his prison sentence after finding he failed to successfully complete treatment for his drug addiction. But while the court relied on the public safety and offender welfare exception to bypass the mandated intermediate sanctions, it failed to "set[] forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the offender will not be served" by imposing those sanctions, as K.S.A. 22-3716(c)(7)(A) requires. We therefore vacate the order sending Figueroa to prison and remand the case to the district court for a new dispositional hearing.

FACTUAL AND PROCEDURAL BACKGROUND

After Figueroa pled guilty to possession of methamphetamine, the district court sentenced him to 30 months' imprisonment but suspended that sentence and granted him 18 months' probation. A few weeks later, the State moved to revoke Figueroa's probation. It alleged Figueroa was discharged from a drug treatment program for failing to comply with its terms, after which he drank alcohol and used methamphetamine.

Figueroa admitted the violations at a hearing, but the district court delayed rendering a disposition decision to allow Figueroa the opportunity to complete a different treatment program.

2

At the dispositional hearing, Figueroa admitted he had again used methamphetamine soon after successfully completing a drug treatment program. Both the State and Figueroa's intensive supervision officer asked the district court to revoke Figueroa's probation and impose his prison sentence based on his drug-related violations. Figueroa, however, asked the court to consider sanctioning him with 30 to 60 days in jail and then reinstating his probation for a new 18-month period as he tried to work towards sobriety. He pointed out that he did successfully complete one drug treatment program and also reported and admitted his drug use.

The district court questioned Figueroa extensively about what he would do differently to comply with his probation terms if given another chance. But, in the end, the court told Figueroa, "I feel like your actions and your words don't really match." The district court explained:

> "[Y]ou've had the opportunity to go through two separate programs to get help with that drug problem. The Court gave you an opportunity from the beginning. As Ms. Neff said, you were a border box.
>
> "You know, I think I made it pretty clear, on the day of sentencing, that I was willing to give you an opportunity, but you had to be the one to make that opportunity work.
>
> "And, you know, I let you out. I let you out of treatment to go to New Chance—or, I'm sorry, I let you out of custody to go to New Chance. You went to New Chance, you got kicked out of there for being disrespectful. You went through Mirror. You were able to complete that.
>
> "So, yeah, I mean, that tells me that you can do it when you want to. But, unfortunately, I don't know what more tools to give you to encourage you to do this. So, the fact that you've continued to violate—
>
> [Figueroa interrupts and asks for another chance]
>
> "Mr. Figueroa, at this point in time, I made the findings at sentencing that there were—there were appropriate treatment programs in the community, gave you an

opportunity to avail yourself of those treatment programs, and to use the tools that they taught you to be able to stay as a member of the community.

"However, because those have failed, and failed very, very quickly, unfortunately, I'm now finding that, at this point in time, it's no longer a viable option. I don't believe that leaving you in the community, at this point in time, serves the community's interest, safety interest, and/or serves your interest the best, at this point in time."

In its journal entry, the district court also noted Figueroa had no job and no prospects for employment as reasons why it bypassed intermediate sanctions. The court revoked Figueroa's probation and ordered him to serve his underlying prison sentence.

REVIEW OF FIGUEROA'S APPELLATE CHALLENGE

Figueroa contends the district court abused its discretion when it imposed his prison sentence because it did not comply with the exception it used to bypass the intermediate sanctions normally required by K.S.A. 22-3716. See *State v. Wilson*, 314 Kan. 517, 520-24, 501 P.3d 885 (2022) (district court abuses its discretion by not following the intermediate sanction or bypass procedure set out in K.S.A. 22-3716).

Under K.S.A. 22-3716(c)(7)(A), a district court may bypass intermediate sanctions and impose the underlying prison sentence after a defendant violates the terms of their probation if: "The court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." Because the statute requires the court to set forth with particularity the reasons for finding this exception applies, implicit determinations are insufficient. *State v. Clapp*, 308 Kan. 976, 989-90, 425 P.3d 605 (2018). Instead, the court's reasoning must be plainly expressed. *State v. Dooley*, 308 Kan. 641, 652, 423 P.3d 469 (2018) (exception requires findings that are "distinct rather than general, with

4

exactitude of detail, especially in description or stated with attention to or concern with details").

*Did the district court abuse its discretion when it imposed Figueroa's prison sentence?*

To justify its decision, the district court relied on Figueroa's inability to successfully complete drug treatment and find employment. But, as Figueroa argues, the court did not explain how Figueroa's struggles meant the public's safety or Figueroa's welfare would not be served by imposition of an intermediate sanction. We also note the inability to find employment is not a statutory basis to bypass intermediate sanctions. K.S.A. 22-3716.

The district court was understandably frustrated with Figueroa's failure to successfully undertake the opportunities it gave him to address his drug addiction. And while we can certainly infer that Figueroa's drug addiction could impact public safety and his welfare, Kansas appellate courts have repeatedly found a district court's findings are insufficient if we must infer the particularized reasons why public safety would be jeopardized or the offender's welfare would not be served. *State v. McFeeters*, 52 Kan. App. 2d 45, 48-49, 362 P.3d 603 (2015); see *State v. Duran*, 56 Kan. App. 2d 1268, 1275-76, 445 P.3d 761 (2019); *Clapp*, 308 Kan. at 991.

In *McFeeters*, our court considered a strikingly similar explanation for bypassing sanctions through the public safety and offender welfare exception. In that case, the district court justified its decision to revoke the defendant's probation as follows:

> "'My major concern is drug usage. This is a drug case; you've failed to go to treatment. You only reported from the records that I see for about two months and I don't know how many [urinalysis tests] you had in two months, but I would venture to say you didn't have that many. You had one that you were dirty, you may have had more, I don't know how many you had. That was one question I was going to ask [ISO] Mr. James, unfortunately, he is

5

not here today, but you stopped reporting in two months. I don't know about the drug treatment and what was set up and whether you could get in right away or not, but it seems to me if you had been on probation before, you knew what you needed to do, you did not do that, you picked up another charge in the meantime, albeit a minor charge, apparently, the municipal court charge, but I do have concerns. I read through last night your LSI–R report and the substance abuse evaluation and I think there was some question in the substance abuse evaluation how accurate your recollection was with regard to your usage of drugs. I think that there was some conflicts, at least the evaluator believed that you said different things different times as to your drug usage, but definitely the recommendation was for completion of the intensive outpatient treatment program which you did not do.'"
52 Kan. App. 2d at 47.

Our court found these statements about the defendant's unwillingness or inability to conform his behavior to the requirements of probation failed to explain how members of the public would be jeopardized if the defendant remained on probation or how the defendant's welfare would not be served by imposition of the intermediate sanctions. 52 Kan. App. 2d at 49.

K.S.A. 22-3716(c)(7)(A) requires more than a generalized finding that the defendant is not amenable to probation to bypass mandatory intermediate sanctions. As in *McFeeters*, the district court's findings here "simply repeat the type of reasoning historically relied upon by sentencing courts in discussing amenability to probation when exercising their discretion to revoke the privilege of probation." 52 Kan. App. 2d at 49.

The State tries to compare this case to the situation in *State v. Wilson*, No. 115,547, 2017 WL 262031, at *1 (Kan. App. 2017) (unpublished opinion). In *Wilson*, we affirmed the district court's bypass of sanctions based on the welfare of the defendant. We determined the district court made the necessary findings when it found that Wilson needed more structure than probation provided to overcome his substance

abuse issues, and that it was in Wilson's best interest to be confined so he could break the cycle of drugs and crime. 2017 WL 262031, at *2.

Again, while we could infer that the district court had similar concerns about Figueroa, it did not state those concerns with particularity like the district court did in *Wilson*. In that case, the court stayed its probation revocation order while Wilson remained in jail for 60 days. Wilson's release from jail was conditioned on social workers finding him a suitable program or establishing some structure that would help Wilson address his mental health and substance abuse issues that were keeping him from being successful on probation. When a hearing was held to update the court, social workers reported that no inpatient treatment resources were found. The court then imposed its revocation order. In doing so, it not only commented on the "change" it observed in Wilson with the "regulation and supervision" he'd received in custody, but the court also told him:

> "'The problem that you have and that I have is when you're left on your own, your addiction starts ruling your life, and I worry about people taking advantage of you as they have on numerous occasions in the past and you acting out against the public. That's the problem that we have and this is how I'm going to solve it.'" 2017 WL 262031, at *2.

In contrast, the district court here only focused on Figueroa's failure to successfully address his drug problem through the two treatment programs it had offered, without explaining why it felt sanctions would not help him succeed. But this logic "is nothing more than saying 'you messed up, you will probably keep messing up, so you are not amenable to probation.'" *Duran*, 56 Kan. App. 2d at 1275-76. And it does not satisfy the requirements in K.S.A. 22-3716(c)(7)(A).

7

*Should we nevertheless affirm the district court's decision because it could have invoked another exception to bypass intermediate sanctions?*

The State submits that if we find the district court failed to explain its decision with sufficient particularity, we can still affirm that decision as right for the wrong reason. *State v. Holley*, 315 Kan. 512, 520, 509 P.3d 542 (2022) (district court may be affirmed if right for the wrong reason).

Here, Figueroa admitted he used methamphetamine while on probation. The State contends the district court could have relied on the new crime exception to bypass an intermediate sanction and revoke Figueroa's probation based on this admission. The State relies on *State v. Roubideaux-Davis*, No. 125,764, 2023 WL 5662765, at *4-7 (Kan. App. 2023) (unpublished opinion) for the proposition that Figueroa's admission is evidence that he possessed the drug. And it points out that possession of methamphetamine is a crime. K.S.A. 21-5706(a). There are a few problems with this argument.

In *Roubideaux-Davis*, the district court bypassed the intermediate sanctioning scheme and revoked the defendant's probation without specifying which exception it was relying on. 2023 WL 5662765, at *1. On appeal, the State argued the defendant's admission to using drugs amounted to the new crime of possession of drugs, which would have justified revoking his probation. We agreed the defendant's admission provided sufficient evidence to find he committed a new crime. 2023 WL 5662765, at *7. But we still reversed the district court's decision, because it did not state that it bypassed intermediate sanctions because Roubideaux-Davis committed a new crime. 2023 WL 5662765, at *8. In other words, even though the district court had the legal authority to revoke probation because the evidence showed the defendant committed a crime, we found the court still needed to identify the statutory provision it relied on when revoking his probation. 2023 WL 5662765, at *9. And even though particularized findings are not required with the new crime exception—as they are with the public safety and offender

8

welfare exception—we refused to assume that the district court intended to use that exception. Here, not only did the district court make no finding that Figueroa committed a new crime, but it relied on a completely different exception to revoke his probation.

Another problem with the State's argument is that bypassing the intermediate sanctions process is optional. K.S.A. 22-3716(c)(7) says the court "may" bypass the mandated intermediate sanctions under certain conditions. The decision to do so is still a discretionary one which lies with the district court. While the court is free to use any of the exceptions listed in K.S.A. 22-3716(c)(7) on remand, we cannot substitute our judgment for the court's and presume how it would exercise its discretion.

Because the district court abused its discretion by revoking Figueroa's probation without setting forth—with particularity—the reasons for its finding that the safety of members of the public would be jeopardized, or that Figueroa's welfare would not be served by imposing an intermediate sanction, we remand the case for a new dispositional hearing.

Vacated and remanded with directions.